# 15-2460

## In the
## United States Court of Appeals
## For the Second Circuit

ROY DOMENECH,

*Plaintiff-Appellant,*

– v. –

PARTS AUTHORITY, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

CERTILMAN BALIN ADLER & HYMAN, LLP
*Attorneys for Defendant-Appellee*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7102
drowe@certilmanbalin.com

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Parts Authority, Inc. certifies that it does not have a parent corporation and/or any publicly held corporation that owns ten percent (10%) or more of its stock.

Dated:     East Meadow, New York
           February 5, 2016

CERTILMAN BALIN ADLER & HYMAN, LLP

By: _____

Douglas E. Rowe
*Attorneys for Defendant-Appellee*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7102
drowe@certilmanbalin.com

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ...............................................................1

**STATEMENT OF JURISDICTION**.......................................................2

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ......................2

**STATEMENT OF THE CASE**................................................................3

**STATEMENT OF FACTS** ....................................................................5

**SUMMARY OF THE ARGUMENT** .................................................13

**ARGUMENT** ....................................................................................15

**POINT I:  THE DISTRICT COURT CORRECTLY FOUND THAT DOMENECH'S PRIMARY DUTY WAS MAKING SALES CUSTOMARILY AND REGULARLY AWAY FROM PARTS AUTHORITY'S PLACE OF BUSINESS THEREBY SATISFYING THE OUTSIDE SALES EXEMPTION.**................................................15

    **A.  Standard of Review** .................................................................15

    **B.  The Record Fully Supports the Conclusion of the District Court that Domenech was an Exempt Outside Salesperson.**.........................................17

    **C.  The Court Should Ignore Domenech's Self-Serving Attempt To Mischaracterize His Employment As Non-Exempt Under The FLSA** ......25

i

**D. Domenech Fails to Show that there is an Issue of Fact as to Whether His Primary Duty was Making Sales** ............................................................27

**POINT II: THE DISTRICT COURT CORRECTLY FOUND THAT DOMENECH WAS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS OVERTIME CLAIM.** ...............................................................31

**POINT III: THE DISTRICT COURT CORRECTLY FOUND THAT PARTS AUTHORITY PROPERLY PLED THE OUTSIDE SALESPERSON EXEMPTION AND, THEREFORE, THAT IT DID NOT WAIVE THE AFFIRMATIVE DEFENSE** ......................................................31

**A. Parts Authority Properly Pled the Outside Salesperson Exemption as an Affirmative Defense.** ...................................................................32

**B. Domenech Has Not Suffered Any Prejudice as a Result of Parts Authority's Motion for Summary Judgment on the Outside Salesperson Exemption Affirmative Defense.** ...................................................35

**CONCLUSION** ..................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ackerman v. Coca-Cola Enters., Inc.*,
    179 F.3d 1260 (10th Cir. 1999) .........................................................................22

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986)...........................................................15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009)................................................................34

*Astor Holdings, Inc. v. Roski, III*,
    325 F. Supp. 2d 251 (S.D.N.Y. 2003) ..............................................................33

*Bell Atlantic Corp. v. Twombly*,
    500 U.S. 544, 127 S.Ct. 1955 (2007)................................................................34

*BellSouth Telecomms., Inc. v. W.R. Grace & Co.*,
    77 F.3d 603 (2d Cir. 1996) ...............................................................................16

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ..............................................................................35

*Blonder-Tongue Laboratories, Inc. v. University of Illinois*
    *Foundation*,
    402 U.S. 313, 91 S. Ct. 1434 (1971)..................................................................35

*DC Comics v. Kryptonite Corp.*,
    No. 00 Civ. 5562, 2002 WL 31159121 (S.D.N.Y. Sept. 26, 2002).....................39

*Dejesus v. HF Mgmt. Servs., LLC*,
    Case No.: 12-CV-1298 (ERK)(RML), 2012 U.S. Dist. LEXIS
    152263, 2012 WL 5289571 (E.D.N.Y. Oct. 23, 2012), *aff'd* 726
    F.3d 85 (2d Cir. 2013) .......................................................................................20

*Doubleday & Co., Inc. v. Curtis*,
763 F.2d 495 (2d Cir. 1983) ...............................................................32

*Economou v. Caldera*,
2000 U.S. Dist. LEXIS 18231, No. 99 Civ. 12117, 2000 WL
1944773 (S.D.N.Y. Dec. 18, 2000) ....................................................36

*Fox v. Commonwealth Worldwide Chauffeured Transportation of New York, LLC*,
865 F.Supp.2d 257 (E.D.N.Y. 2012) ..................................................18

*Franco v. Ideal Mortg. Bankers, Ltd.*,
No. 07-CV-3956 (JS)(AKT), 2011 WL 317971 (E.D.N.Y. Jan. 28, 2011) .............................................................................................25, 29

*General Star Indem. Co. v. Driven Sports, Inc.*,
Case No.: 14-CV-3579(JFB)(ARL), 2015 U.S. Dist. LEXIS 7966 (E.D.N.Y. Jan 23, 2015) ..................................................................16

*Gengo v. City Univ. of N.Y.*,
Case No.: 07-CV-681(KAM)(JMA) 2010 U.S. Dist. LEXIS 142330, 2010 WL 6372012 (E.D.N.Y. Dec. 2, 2010), *aff'd* 479 Fed. Appx. 382 (2d Cir. 2012)...................................................................15

*Golden v. Merrill Lynch & Co., Inc.*,
No. 06 Civ. 2970, 2007 WL 4299443 (S.D.N.Y. Dec. 6, 2007) .......................17

*Gonzalez v. Micelli Chocolate Mold Co.*,
514 F. App'x 11 (2d Cir. 2013) ..........................................................16

*Hayes v. N.Y.C. Dep't of Corr.*,
84 F.2d 614 (2d Cir. 1996) .................................................................29

*Hernadez v. City of Harford*,
30 F. Supp. 2d 268 (D. Conn. 1998).....................................................33

*Magana v. Northern Mariana Islands*,
107 F.3d 1436 (9th Cir. 1997) ............................................................36

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348 (1986)...................................................15

iv

*Miller v. Batesvill Casket Co.*,
219 F.R.D. 56, 2003 U.S. Dist. LEXIS 22461 (E.D.N.Y. 2003),
*aff'd in part and vacated in part on other grounds, remanded*, 312
Fed Appx 404 (2009, CA2 NY) .......................................................................32

*Mota v. Imperial Parking Sys.*,
No. 08-cv-9526, 2010 U.S. Dist. LEXIS 87593, 2010 WL 3377497
(S.D.N.Y. Aug. 24, 2010) ...................................................................20, 21, 22

*Mullins v. City of New York*,
523 F.Supp.2d 339 (S.D.N.Y. 2007) ................................................................18

*Quiles v. City of New York*,
No. 11 CIV. 5613(FM), 2013 WL 5744322 (S.D.N.Y. Oct. 23
2013) ...........................................................................................................25, 29

*Rommage v. MTA Long Island Rail Road*,
452 Fed.App'x 70 (2d Cir. 2012) ....................................................................16

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
521 F. Supp. 29 188, 213 (E.D.N.Y. 2007) ....................................................35

*Schwind. v. EW & Associates, Inc.*,
357 F. Supp. 2d 691 (S.D.N.Y. 2005) .............................................................30

*Shabazz v. Pico*,
994 F.Supp. 460 (S.D.N.Y. 1998) ...................................................................17

*Steinberg v. Columbia Pictures Indus.*,
663 F. Supp. 706 (S.D.N.Y 1987) ...................................................................35

*Stevens v. SimplexGrinnell, LLP*,
190 Fed. Appx. 768 (11th Cir. 2006)...............................................................23

*Topo v. Dhir*,
2004 U.S. Dist. LEXIS 4134 (S.D.N.Y. March 15, 2004) ...............................18

*Van Pier v. Long Island Sav. Bank*,
20 F. Supp. 2d 535 (S.D.N.Y. 1998) ...............................................................36

*Williams v. Ashland Eng'g Co., Inc.*,
45 F.3d 588 (1st Cir. 1995)..............................................................................33

**Federal Statutes**

29 U.S.C. § 207(a)(1) ...................................................................17

29 U.S.C. § 213(a)(1) ..............................................................17, 18

**Rules**

Fed R. Civ. P. 56(c) ...................................................................15

FRCP Rule 8(a) ........................................................................34

FRCP Rule 8(a)(2) ................................................................34, 35

FRCP Rule 8(c) ...........................................................32, 33,34, 35, 38

**Regulations**

29 C.F.R. § 541.3(a) ...................................................................29

29 C.F.R. §§ 541.100-541.601 (2011) ...................................................38

29 C.F.R. § 541.500 ....................................................................24

29 C.F.R. § 541.500(a) .............................................................19, 25

29 C.F.R. § 541.500(b) .............................................................22, 29

29 C.F.R. § 541.501(b) .................................................................19

29 C.F.R. § 541.502 ....................................................................25

69 F.R. 22122 ..........................................................................30

69 Fed. Reg. 22122, 22162 ..............................................................19

**Other Authorities**

American Heritage Dictionary of the English Language 1056 (4th ed.
2006) .............................................................................19

## **PRELIMINARY STATEMENT**

Defendant-Appellee Parts Authority, Inc. ("Parts Authority"), by its attorneys Certilman Balin Adler & Hyman, LLP, respectfully submits this brief in opposition to the appeal brought by Plaintiff-Appellant Roy Domenech ("Domenech"). Domenech appeals from the decision and order dated August 4, 2015 issued by Honorable I. Leo Glasser of the United States District Court for the Eastern District of New York. Judge Glasser granted Parts Authority's motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedures.

Simply stated, Parts Authority is an aftermarket parts distributor and retailer of automobile and auto-related parts; it is not a mobile technician or mechanic shop. Domenech's contention that he was a technician for Parts Authority is simply false and is not supported by the record. Domenech's primary duty as an employee was first and foremost making outside sales of auto parts and automobile service equipment, which he did customarily and regularly away from Parts Authority's place of business. Incidental to making outside sales, Domenech performed tasks such as collections, writing sales reports, making calls to customers and maintaining entries in a call-log. The documents generated by Domenech's performance of the foregoing tasks incontrovertibly illustrate that

1

Domenech was an outside salesperson, consummated numerous sales and was credited for same throughout his employment.

As discussed at length *infra*, Domenech was exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL") by reason of the outside salesperson exemption. Domenech's alleged occasional performance of non-exempt duties does not destroy the classification of Domenech as an outside salesperson since his primary duty remained at all times making outside sales away from Parts Authority's place of business. Accordingly, the District Court properly granted Parts Authority's motion for summary judgment dismissing Domenech's complaint, and this Court should affirm the District Court's ruling.

## STATEMENT OF JURISDICTION

Parts Authority does not dispute Domenech's jurisdictional statement.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Issue 1:     Did the District Court correctly determine that Parts Authority's motion for summary judgment should be granted in its entirety?

Yes.  Judge Glasser correctly held that Domenech failed to raise an issue of material fact on his claim for overtime pay.

Issue 2:    Was the outside salesperson overtime pay exemption applicable to Domenech's claims because his primary duty was to make sales customarily and regularly undertaken away from Parts Authority's premises.

Yes, the outside salesperson overtime pay exemption is applicable to Domenech's claims.

Issue 3:    Did Parts Authority satisfy the pleading requirement for the overtime pay affirmative defense?

Yes, under these circumstances, Parts Authority satisfied the pleading requirement for the overtime pay exemption affirmative defense.

## STATEMENT OF THE CASE

Domenech's complaint alleges violations for unpaid overtime wages under the FLSA and NYLL.  He claims that he worked more than 40 hours per week for Parts Authority and was not paid at 1.5 times his regular rate for his overtime hours.

Parts Authority filed an answer to the complaint on August 14, 2014 (A14-20) which included various affirmative defenses including "Domenech may be exempt from overtime requirements under the Fair Labor Standards Act and/or the New York Labor Law and therefore is not entitled to overtime pay during all relevant periods."  (A19)  Domenech was on notice from the outset of this action that Parts Authority's principal defense would be the outside salesperson

3

exemption, as evidenced by his counsel's admission at the initial conference before the Magistrate Judge that "the issue will be the exemption…we don't believe [Domenech] was much of a salesman." (A317) Moreover, there are limited cognizable overtime exemptions under the FLSA and NYLL, and the outside salesperson exemption is the only exemption that could have been applicable to Domenech's employment with Parts Authority, which clearly was the basis for Domenech's admission at the initial conference. Thus, Parts Authority did not waive the affirmative defense in its answer.

Parts Authority moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure claiming Domenech is an outside salesperson exempt from the overtime pay requirements of the FLSA and NYLL. (A21-22) In its motion, Parts Authority relied predominantly on documentary evidence prepared by Domenech in which he articulated his duties as an outside salesperson and his deposition testimony in which he also acknowledged such duties and otherwise testified inconsistently as to any other duties. (A23-247)

Domenech cross-moved for summary judgment on his claim pursuant to the same Rule, alleging that Parts Authority failed to adequately plead the exemption as an affirmative defense and that his duties while employed by Parts Authority preclude a finding that he was an outside salesperson. (A248-49) In support of his position, Domenech predominantly relies on the contention that the work he

4

performed installing lifts for Parts Authority's customers somehow converts him from an exempt position to non-exempt position under the FLSA. (A250-305) This contention, however, is a red herring, as recognized by the lower Court, as such work did not alter the inescapable conclusion that Domenech's primary duty was as an outside salesperson.

On August 3, 2015, the District Court issued a memorandum and order (A417-32) granting Parts Authority's motion for summary judgment and denying Domenech's motion, and dismissing the complaint. Domenech appeals that decision.

## STATEMENT OF FACTS

### A. Domenech's Employment at Parts Authority

Parts Authority is engaged in business as an aftermarket retailer of automobile and auto-related parts. As detailed by the Chairman of Parts Authority, Yaron Rosenthal, Domenech worked for Parts Authority's predecessor, Clearway Auto Parts, from approximately 1981 through 1991. (A23-24; *see also* Deposition Transcript of Domenech[1], (A114-15)) In 1991, Domenech was promoted and began working in a sales capacity for another one of Parts Authority's affiliated companies, Accurate Automotive ("Accurate"), a company engaged in the sales of automobile service equipment. (A24) Subsequently, from September 2008 to

---

[1] The Deposition Transcript of Domenech is hereinafter referred to as "Domenech Tr."

December 2010, Domenech was transferred to Parts Authority as an outside salesperson so that Parts Authority could maintain a more appropriate level of management over Domenech due to ongoing employment issues. (*See* A24 (discussing employment issues with Domenech)) In January 2011, Domenech was again re-assigned to Accurate as an outside salesperson through January 2013. (A24) In January 2013, Domenech once again was transferred to Parts Authority as an outside salesperson, where he worked up until his termination in January 2014. (A24) As explained by Mr. Rosenthal, Domenech was transferred between companies, depending upon the need of both entities, as he possessed the ability to sell both products and provided both businesses with a level of flexibility that suited Parts Authority as business conditions changed over the years. (A25)

## B. **Domenech's Primary Duty Was Making Sales**

Notwithstanding Domenech's contention, it is irrefutable that while employed by Parts Authority, Domenech's primary duty was to make outside sales to Parts Authority's customers and Domenech's duties were customarily and regularly performed away from Parts Authority's place of business. (A25-28) Domenech performed additional duties incidental to his primary sales duty such as collections and writing sales reports. (A25-28) Domenech was paid on a salary basis, did not keep a record of his hours worked and distributed business cards to the businesses he would visit. (A29; *see also* Domenech Tr. (A25 and 173-75))

As an outside salesperson, Domenech sold equipment, parts and services to auto repair shops, tire shops, towing companies and body shops. (A25) Domenech also completed sales calls and maintained sales call-logs in connection with his sales efforts clearly illustrating his duties as an outside salesperson. (A25; *see also* A31-44 (setting forth Domenech's postings of approximately 600 comments in Parts Authority's sales management software each of which directly referenced Domenech's duties as a salesperson)) Domenech's sales call-log contains entries in his own words reflecting his sales efforts, such as:

- "Auto depot is now automotive depot and he wants to buy from us";
- "great bear of queens KN never happy, I am working on Vincent for more business;
- "speedy buying more parts sold him a lift paid for it in full and very happy";
- "big arch fan tried to get more business from this guy";
- "I am working on getting more out of these this guy";
- "this guy is on the hit list for more business";
- "I signed him up on the akobono brake expert program";
- "new account big arch account got him to stock centric brakes working on getting more business";
- "sold him the Monroe program"; and
- "I guess my talk with the owner paid off. They bought the last two days".

(A31-44) In addition to completing sales calls and maintaining a sales call-log, Domenech prepared written call report/sales lead sheets wherein he listed himself as the salesman. (A25) Beyond sales calls, Domenech would list himself as the

"Sales Representative" on written credit applications for his sales customers and Domenech also sent emails discussing his sales efforts and success. (A27) Moreover, Domenech admitted that he attended sales meetings alongside the other salespeople employed by Parts Authority (A171-72), and Parts Authority's records clearly identify and credit Domenech for the sales he consummated. (A27) Domenech categorized himself as a salesperson by noting how "other salespeople would call me to see if I could stop in" to stores not on his assigned list. (A151-152) (*emphasis added*).

It is without genuine dispute that Domenech sold equipment, parts and services to the end-user. (A25-26; *see also* Domenech Tr. (A183-85) (conceding that Domenech sold parts/stock to the client indicated in the document shown to Domenech)) Notably, when Domenech was asked during his deposition what his duties were between 2008 and 2014, Domenech expressly responded "Selling equipment" (A119); Domenech then attempted to change his response to say he installed equipment but went on to explain that he regularly prepared sales quotes for customers to purchase equipment and parts. (A119-20) Later in the deposition, Domenech was handed a call report that he had personally prepared which stated "New account. Sold them a bunch of stuff. To check on more stock." (A184) Even with this document in hand, Domenech attempted to deny and minimize the sales duty he had clearly performed for Parts Authority. (A184-85) Nevertheless,

8

Parts Authority's records clearly identify and credit Domenech for sales he personally consummated. (A57-96)

Upon Domenech's request to earn additional income, Parts Authority permitted Domenech to perform lift installations as a contractor for Parts Authority, separate and apart from Domenech's sales position. (A28-29; *see also* Domenech Tr. (A131)) Domenech would even hire his own assistant or subcontract the work to others at times. (A28; *see also* Domenech Tr. (A136)) Parts Authority's records evidence that Domenech performed only 111 lift installations over the four year period he did them (A383-87) and, according to Domenech, each lift installation, for the most part, would take only "three, three and a half hours" to complete. (A217) Therefore, even if the lower Court found that the lift installations performed by Domenech were as an employee of Parts Authority, which it did not, said installations constituted a de minimis percentage of Domenech's overall duties and are insufficient to overcome the conclusion that he fell squarely within the outside sales exemption.

Domenech also unsuccessfully attempted to characterize his employment as customer service during his deposition. (*See* A123 ("Q. So, it's your testimony that you did no sales at all? A. It was customer service is what I did."); *compare with* A185 ("Q. That's an indication that you performed sales duties, isn't it? Yes or No? A. Yes"))

9

In its detailed review of the record, the lower Court correctly found that "much of…[Domenech's] deposition…contradicts his assertion that he undertook visits [to customers] in the capacity of a technician." (A419)

## C. __Domenech's Claim Regarding His Performance of Lift Installations is a Red Herring__

Domenech asserted in his complaint that he was non-exempt simply because he installed a small number of lifts (in addition to his duties as an outside salesman). (A9)  However, Parts Authority maintains that it hired outside contractors to perform all lift installation work.  (A28)  It was Domenech who approached Parts Authority and requested to perform the lift installations as a contractor for additional income in the stead of the other outside contractors used by Parts Authority:

> Q.  Did there come a time that you asked [Yaron] Rosenthal if you could do the lift installations for Parts Authority instead of them using [outside contractor] Sir Industries?
> A.  Yeah.  It wasn't really Parts Authority.  It was more Accurate Automotive Equipment.  That was the name of the company.
> Q.  Okay.  Did you make that request to [Yaron] Rosenthal –
> A.  Back in the '80s, yes.
> Q.  Let me just finish the question.  – if you could do the lift installation instead of [outside contractor] Sir Industries for Accurate Automotive?
> A.  Yes.

(A131) (*emphasis added*)

10

> Q. I'm going to bring you to 2008 to 2014. <u>When you
> did lift installations for Parts Authority, were you paid
> separately for the lift installations as compared to your
> regular salary</u>?
> A. <u>Yes</u>.
> Q. <u>Why was that</u>?
> A. <u>It's an installation. We had a, we had a deal</u>.
> Q. <u>Can you describe your deal</u>?
> A. <u>It was installation money</u>. He would pay me for every
> installation I would do.
> Q. Who did you make this deal with?
> A. [Yaron] Rosenthal.
> Q. And the deal was that you would be paid for every
> installation?
> A. Yes.
> ….
> Q. Did you receive that in cash or check?
> A. Check.
> Q. As part of your salary check?
> A. <u>No, it wasn't part of my salary</u>.

(A132-33) (*emphasis added*)

Domenech additionally affirmed that he used his own tools and hired his

own helpers, who were not employed by Parts Authority, to assist Domenech in lift

installations:

> Q. What equipment or tools would you need to use for
> lift installations?
> A. A hammer drill.
> Q. Did you own a hammer drill?
> A. Yes, I did.
> Q. <u>When you performed installation of lifts, did you
> work with anyone</u>?
> A. <u>Most of the time I had to get my own helper</u>.
> Q. <u>Were the helpers employed by Parts Authority</u>?
> A. <u>No</u>.

11

> Q. <u>Or Accurate Automotive</u>?
> A. <u>No</u>.
> Q. Did you pay the helpers?
> A. Sometimes I would pay them out of my installation money or they would pay them.
> Q. Who is they?
> A. The company; Accurate or Parts Authority would pay them.
> Q. How much did you pay them?
> A. It depended on the job. About 50 or 75$ a day.

(A136) (*emphasis added*)

Furthermore, Domenech testified that each lift installation typically would only take approximately three and one-half (3.5) hours. (A217) Parts Authority's records demonstrate that Domenech performed a mere 111 lift installation over a four year period (A383-87), which would total on average only 97 hours of work per year (or less than two hours per week) for Domenech.

Domenech testified in his deposition that since 2008 (covering the six year period prior to the commencement of this action), he installed only "a couple hundred" lifts (A218) Thus, even assuming, *arguendo,* that the lift installations were performed as part of Domenech's overall employment duties, which Parts Authority maintains they were not, the amount of time Domenech spent performing lift installations constitutes a de minimis percentage of Domenech's overall duties (as the lower Court found (A429-30) and is not sufficient to overcome the established fact that Domenech's primary duty was making sales.

Domenech also contends that included among his duties related to lifts was to inspect the lifts for customers.  (A225)  However, Domenech acknowledged the ultimate purpose of these inspections was to sell parts, if necessary.  (A225)  Thus, Domenech's suggestion that his inspection of lifts somehow converts him to a non-exempt employee is also a red herring.

### D. Domenech Was Customarily and Regularly Engaged Away From The Employer's Place of Business in Performing His Primary Duty

During the deposition of Domenech, Domenech acknowledged and explained that approximately 80% of his time working was expended away from Parts Authority's place of business on traveling to and between customers.  (A117-18 and 126)  Domenech was also provided a car allowance and even borrowed an EZ Pass from Parts Authority to aid in his frequent travel related expenses.  (A173)  Based on Domenech's own deposition testimony, as well as the documentary evidence in his own words, there is no dispute that Domenech was "customarily and regularly engaged away from the employer's place of business."

### SUMMARY OF THE ARGUMENT

The District Court correctly granted Parts Authority's motion for summary judgment dismissing the complaint because, under these circumstances, there are no issues of material fact warranting a trial.

13

First, Domenech argues that the District Court overlooked facts supporting his claim that he met his evidentiary burden of establishing the existence of genuine issues of material fact sufficient to withstand the entry of summary judgment dismissing the complaint. Judge Glasser, however, correctly held that "despite [Domenech's] inconsistent claims to the contrary at his deposition and in his declaration opposing [Parts Authority's] motion, the record evidence shows he was an outside salesman first and foremost." (A427)

Second, Domenech argues that the District Court somehow overlooked facts supporting his claim that he was entitled to summary judgment on his overtime claims. Domenech, however, is incorrect because the evidence overwhelmingly supports the conclusion that Domenech was exempt from overtime.

Third, Domenech argues that Parts Authority somehow waived the affirmative defense as to the outside salesperson exemption in its answer. Domenech is simply incorrect because Parts Authority satisfied the pleading requirement and Domenech was at all times aware, based on Parts Authority's answer, that the issue was whether Domenech fell within the outside salesperson exemption.

On the record below, Judge Glasser evaluated and correctly rejected each of these arguments put forth by Domenech.

14

## ARGUMENT

**POINT I.   THE DISTRICT COURT CORRECTLY FOUND THAT DOMENECH'S PRIMARY DUTY WAS MAKING SALES CUSTOMARILY AND REGULARLY AWAY FROM PARTS AUTHORITY'S PLACE OF BUSINESS THEREBY SATISFYING THE OUTSIDE SALES EXEMPTION.**

### A.   Standard of Review

The standards governing motions for summary judgment are well-settled.  A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law.  *See* Fed R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348 (1986); *see also Gengo v. City Univ. of N.Y.*, Case No.: 07-CV-681(KAM)(JMA) 2010 U.S. Dist. LEXIS 142330, 9, 2010 WL 6372012 (E.D.N.Y. Dec. 2, 2010), *aff'd* 479 Fed. Appx. 382 (2d Cir. 2012). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).  There must be sufficient evidence in the record to support a jury verdict in the non-moving party's favor to create an issue for trial.  *See id.*

To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  As the Supreme Court stated in *Anderson*, "if

15

the evidence is merely colorable, … or is not significantly probative, … summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). The non-moving party "may not rest upon mere conclusory allegations or denials to defeat the motion, but rather must provide 'concrete particulars' showing that trial is needed." *General Star Indem. Co. v. Driven Sports, Inc.*, Case No.: 14-CV-3579(JFB)(ARL), 2015 U.S. Dist. LEXIS 7966, 12 (E.D.N.Y. Jan 23, 2015) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

In *Rommage v. MTA Long Island Rail Road*, 452 Fed.App'x 70, 71 (2d Cir. 2012), the Second Circuit set forth the standard for reviewing summary judgment orders on appeal and stated, in relevant part: "Our standard of review for … motions for summary judgment is de novo. On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party." *Id.* (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)); *see also Gonzalez v. Micelli Chocolate Mold Co.*, 514 F. App'x 11, 12 (2d Cir. 2013) (applying the same standard of review to the grant of a motion for summary judgment). However, as properly explained by the lower Court, courts in the

16

Second Circuit are reluctant to credit a party's declarations that allege critical material facts that were contradicted by or not mentioned in deposition testimony, noting that such circumstances strongly suggest a sham declaration. (A427); *see also Golden v. Merrill Lynch & Co., Inc.*, No. 06 Civ. 2970, 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007) (citing *Bunting v. Nagy*, 452 F.Supp.2d 447, 460 (S.D.N.Y. 2006)).  "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility," courts are permitted to "pierce the veil of [a] complaint's factual allegations, dispose of some improbable allegations, and dismiss [a] claim." *Shabazz v. Pico*, 994 F.Supp. 460, 470 (S.D.N.Y. 1998) (citing, *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)) (internal quotations marks and alterations omitted).

## B. The Record Fully Supports the Conclusion of the District Court that Domenech was an Exempt Outside Salesperson.

Under the FLSA, an employee must be paid by his employer for work performed in excess of forty (40) hours in a week "at a rate of not less than 1 and ½ times the regular rate which he is employed."  29 U.S.C. § 207(a)(1).  The Federal Regulations promulgated pursuant to the FLSA allow for exemption from this overtime pay for "any employee employed…in the capacity of outside salesman."  29 U.S.C. § 213(a)(1).

17

"The New York State Department of Labor takes the position that the overtime provisions contained in the [NYLL] expressly incorporate the FLSA's exemptions." *Fox v. Commonwealth Worldwide Chauffeured Transportation of New York, LLC*, 865 F.Supp.2d 257 (E.D.N.Y. 2012) (citing 12 N.Y.C.R.R. § 142-2.2); *see also Topo v. Dhir*, 2004 U.S. Dist. LEXIS 4134 (S.D.N.Y. March 15, 2004) (directing that the FLSA and NYLL are given consistent interpretations).

While questions of fact may exist regarding the time a plaintiff spent at work and the manner in which he spent his time, the question of whether plaintiff's particular activities exclude him from overtime benefits under the FLSA is a question of law. *Mullins v. City of New York*, 523 F.Supp.2d 339, 353 (S.D.N.Y. 2007) (citing *Icicle Seafoods, Inc. v. Worthington et al.*, 475 U.S. 709, 714 (1986)).

It is incontrovertible that Domenech was exempt from the FLSA and NYLL as an outside sales employee. *See* 29 U.S.C. § 213(a)(1) (exempting from overtime those employed "in the capacity of outside salesman"). Department of Labor Regulations define an "outside salesman" as an employee:

> (1) Whose primary duty is:
>     (i) making sales within the meaning of section 3(k) of the Act, or
>     (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (2) Who is customarily and regularly engaged away from the employer's place of business in performing such primary duty.

18

29 C.F.R. § 541.500(a). As established *infra*, Domenech's primary duty while employed for Parts Authority was making sales and Domenech was customarily and regularly engaged away from Parts Authority's place of business in performing his sales duties.

### i. *Domenech's Primary Duty was Making Sales Within the Meaning of Section 3(k) of the Act.*

The lower Court correctly found that "[d]espite [Domenech's] inconsistent claims to the contrary at his deposition and in his declaration opposing [Parts Authority's] motion, the record evidence shows that he was an outside salesman first and foremost." (A427)

Under the FLSA, "sale" or "sell" includes "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 C.F.R. § 541.501(b). With respect to the Regulations' requirement that an employee must be "making sales," the ordinary meaning of "making sales" reaches employees who "bring about" sales, "create" sales, or "cause" sales "to exist or happen." *See* American Heritage Dictionary of the English Language 1056 (4th ed. 2006). In promulgating the 2004 Regulations, the Department of Labor explained that an employee will qualify for the outside sales exemption if the employer "demonstrates objectively that the employee, *in some sense*, has made sales." 69 Fed. Reg. 22122, 22162 (Apr. 23, 2004). "To take advantage of the FLSA's

exemptions, the employer must offer proof of the 'actual duties' of the employee, not just her job description, title, or the general duties of similarly situated employees." *Dejesus v. HF Mgmt. Servs., LLC*, Case No.: 12-CV-1298 (ERK)(RML), 2012 U.S. Dist. LEXIS 152263, *6-7, 2012 WL 5289571 (E.D.N.Y. Oct. 23, 2012), *aff'd* 726 F.3d 85 (2d Cir. 2013).

Here, contrary to the repeated assertions within Appellant's Brief that Domenech's duties and responsibilities "had nothing to do with sales" (Appellant's Brief, Doc. 27, p.17), Domenech sold equipment, parts and services from auto parts retailer Parts Authority to auto repair shops, tire shops, towing companies and body shops. (A25-27; *see also,* Domenech Tr. (A183-185) (conceding that Domenech sold parts/stock to the client indicated in the document shown to Domenech))

In furtherance of Domenech's outside sales duties, he completed sales calls with customers and maintained a sales call-log clearly illustrating his duties and efforts. (*See* A25 (explaining that Domenech posted approximately 600 comments in Parts Authority's management software, each of which directly referenced Domenech's duties as a salesperson)) Domenech's sales call-log contains entries in Domenech's own words reflecting his sales efforts. (A31-44)

The current matter is analogous to the case *Mota v. Imperial Parking Sys.*, No. 08-cv-9526, 2010 U.S. Dist. LEXIS 87593, 2010 WL 3377497 (S.D.N.Y.

20

Aug. 24, 2010) due to the scope and magnitude of Domenech's inconsistent and contradictory assertions. In *Mota*, the plaintiff attempted to argue that he was a non-exempt employee; however, the court recognized that plaintiff's testimony contained numerous inconsistencies, the plaintiff had signed and prepared documents demonstrating that he was supervisor, and there was a lack of documentary evidence that would support plaintiff's contention that he was merely a "checker". *Id.*, at *12-31. The court in *Mota* held:

> [B]ased on (1) Mota's own statements regarding his pay structure, job duties, an relative responsibilities; (2) his inconsistencies in describing his duties; and (3) the implausibility of his depiction of his lack of authority, *especially in comparison to the credible evidence submitted by defendants*; we find that Mota was an exempt employee…

*Id.*, at *31 (*emphasis provided*).

Similar to the plaintiff in *Mota*, in the current matter, Domenech has unsuccessfully attempted to characterize his employment as "customer service" or "technician" during his deposition. (*See* Domenech Tr. (A123) ("Q. So, it's your testimony that you did no sales at all? A. It was customer service is what I did."); *compare with* Domenech Tr. (A185) ("Q. It says you intended to sell him more stock; right? A. Stock. Q. That's an indication that you performed sales duties; isn't it? Yes or No? A. Yes.")) Notwithstanding Domenech's self-serving mischaracterization of his own employment, the Regulations treat as exempt all

work "incidental to and in conjunction with the employee's own outside sales or solicitations" including "writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." 29 C.F.R. § 541.500(b). Parallel to the *Mota* case, Domenech prepared and signed documents which demonstrate that his primary duty was performing exempt work (making sales), and has failed to present sufficient evidence to support his contention that he was not a salesperson. It is irrefutable that Domenech's telephone conversations, sales call-logs, written call reports/sales lead sheets, written customer credit applications and emails are incidental to and in conjunction with Domenech's efforts to consummate sales and perform his outside sales duty; consequently, all such work is exempt as a matter of law.

Although there are a limited number of cases analyzing the outside sales exemption in the Eastern District of New York and even the Second Circuit, other Federal Courts addressing the topic and analyzing similar circumstances have found the employee to be an exempt outside salesperson. *See Ackerman v. Coca-Cola Enters., Inc.*, 179 F.3d 1260 (10th Cir. 1999) (finding that even though employees engaged in substantial promotional activity such as restocking store shelves and setting up product displays, the sales reps and account managers were exempt outside sales employees because those activities were incidental to and in conjunction with sales accomplished through the employees' transactions with

22

store personnel); *Stevens v. SimplexGrinnell, LLP*, 190 Fed. Appx. 768 (11th Cir. 2006) (affirming summary judgment determination that the plaintiff was an exempt outside salesperson because "[a]lthough she also provided service to existing customers, this duty was 'incidental to an in conjunction with the employee's own outside sales' because the service that [plaintiff] provided to these customers furthered her ability to make sales that increased her commission").

The overwhelming credible evidence submitted by Defendant in comparison to Plaintiff's self-serving mischaracterization of his duties supports a finding that Plaintiff was an exempt employee because his primary duty was making outside sales.

Domenech makes much ado about nothing in arguing that the extent of his work regarding the lift installations and lift inspections and repairs somehow create a question of fact as to whether his primary duty was "making sales". At the outset, it was not lost upon the lower Court and should be recognized by this Court that the essential nature of Parts Authority is to sell auto parts. Thus, to the extent Domenech performed lift installations, it was incidental to the sale and delivery of the lifts; to the extent he performed lift inspections, it was incidental to and in conjunction with selling parts, if necessary; and to the extent he performed repairs on the lifts, it was incidental to and selling parts to enable him to make such repair.

23

The specious nature of Domenech's argument that the lift installations work somehow suggests that his primary duty was not "making sales" is underscored by his acknowledgement that he had requested to perform that work as an outside contractor, that he was paid separately for the lift installations as compared to his regular salary, and that he hired his own helpers as would an outside contractor. (A131-136) Indeed, the record reflects that Domenech received separate payments for installing lifts. (*See* A98 (providing a list of payments made to Domenech for lift installations))

It should further be noted that an employee's occasional performance of non-exempt work does not destroy the employee's exemption from the provisions of the FLSA. *See* 29 C.F.R. §541.500 (explaining that the focus in determining whether the exemption applies is on the employee's "primary duty," and that not all duties performed by the employee are required to be making sales). The lower Court correctly found that Domenech's lift installation work was "incidental to and in conjunction with [his] own outside sales," and therefore "shall be regarded as exempt outside sales work." (A430 (quoting 29 C.F.R. § 541.500(b)).

> **ii.    *Plaintiff Was Customarily and Regularly Engaged Away From The Employer's Place of Business in Performing His Primary Duty.***

In addition to Domenech's primary duty, the Department of Labor's Regulations require that Plaintiff was "customarily and regularly engaged away

24

from the employer's place of business in performing such primary duty." 29 C.F.R. § 541.500(a).  Under the FLSA, "[t]he outside sales employee is an employee who makes sales at the customer's place of business."  29 C.F.R. § 541.502.

During his deposition, Domenech acknowledged and explained that approximately 80% of his time working was expended away Parts Authority's place of business on traveling to and between customers.  (A117-18 and 126) Domenech was also provided a car allowance and even borrowed an EZ Pass from Parts Authority to aid in his frequent travel related expenses.  (A173)  Based on Domenech's own deposition testimony, as well as the documentary evidence in his own words, there is no dispute that Domenech was "customarily and regularly engaged away from the employer's place of business." 29 C.F.R. §541.500(a).

### C.  The Court Should Ignore Domenech's Self-Serving Attempt To Mischaracterize His Employment As Non-Exempt Under The FLSA

"It is well-settled that a party cannot create a genuine issue of material fact by submitting a self-serving declaration that contradicts prior deposition testimony."  *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS)(AKT), 2011 WL 317971, at *9 n.8 (E.D.N.Y. Jan. 28, 2011); *see also Quiles v. City of New York*, No. 11 CIV. 5613(FM), 2013 WL 5744322, at *14 (S.D.N.Y. Oct. 23 2013) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.2d 614, 619 (2d Cir. 1996))

(maintaining that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony").    Accordingly, Domenech's manufactured declarations—submitted both in support of his own motion and in opposition of Defendant's motion—properly "fell on deaf ears" before the lower Court since it attempted to contradict Domenech's previous deposition testimony.

The lower Court was correct in concluding that Domenech's use of his self-serving declarations to redefine his employment as that of technician was improper stating "[Domenech's] claim that his daily visitations to Parts Authority customers were in the capacity of a technician doing service or installing something…is totally undercut by the multiple instances in his deposition testimony…in which he admitted that he worked in sales, as well as by his own entries in [Parts Authority's] customer management system." (A427)    Domenech's deposition testimony was correctly found by the lower Court to be controlling and layed bare that Domenech sold equipment, parts and services to auto repair shops, tire shops, towing companies and body shops.  (*see* A183-85 (admitting that Domenech sold parts/stock to the client indicated in the document shown to Domenech)) Furthermore, Domenech's deposition testimony is replete with evidence that Domenech completed sales calls with customers, maintained a sales call-log

26

clearly illustrating his sales efforts, prepared written call reports/sales lead sheets listing himself as the salesman, helped complete credit applications for sales customers, sent email correspondence discussing his sales efforts and success and even attended sales meetings alongside the other sales employees. (*See generally* A110-241)

### D. Domenech Fails to Show that there is an Issue of Fact as to Whether His Primary Duty was Making Sales

No matter how many times Domenech attempts to title/label his position (albeit inconsistently) as "customer service," "manual worker," "mechanic" or "technician," the actual duties performed by Domenech in the course of his employment for Parts Authority incontrovertibly exclude Domenech from overtime benefits under the outside salesperson exemption.

Domenech attempts to create a dispute as to the amount of "technician" work performed by him. However, in his deposition testimony, Domenech admits that he requested to work as an outside contractor, separate from his employment for Parts Authority, used his own tools, hired his own helpers—who were not employed by Parts Authority—and was compensated fully and separately from his salary for all automotive lift installations he performed. (A131-36) Moreover, Domenech admitted that the manual labor he carried out, such as to "fix a lift that was broken or a cable needed to be adjusted" was all done <u>on his own time</u>, <u>as a</u>

<u>favor for friends</u>, not as part of his work duties and not in the course of his daily work for Parts Authority. (A129) In exchange for these purported manual labor services, Domenech testified at his deposition that he would receive tips and/or personal car-repair services from the customer:

> Q. What would be a service call?
> A. It would just be a service, fix a lift that was broken or a cable needed to be adjusted or something like that, something minor.
> Q. That would be your own time?
> A. Yeah.
> Q. So, you didn't do any lift installations on your own time?
> A. No.
> Q. Did you receive any payments for doing these - -
> A. Most of the work I did - -
> Q. I have to finish so she can take it down, and then you answer. So, did you receive any payments for the work that you did on the side?
> A. <u>Most of the work I did was for my friends. Customers that were my friends, that I grew up with, and I didn't charge them, no.</u>
> Q. So, you didn't get paid?
> A. <u>They would give me a tip, yes.</u>
> Q. But you didn't do life installations on the side?
> A. No. I would get a tip from the customers for any service that I would do.
> Q. Did you receive cash, a cash tip?
> A. Sometimes.
> Q. Did you receive checks?
> A. No.
> Q. So, when you would receive a tip, would it be in some other form other than cash or check?
> A. <u>They would repair my car or do a favor, a trade off.</u>

28

(A129-30) (*emphasis added*)  Again, Domenech's self-serving declaration as to the amount of manual labor he performed, the number of lift installations completed and the amount of time it would take Domenech to perform a lift installation is all inconsistent with his prior deposition testimony and thus properly was not given any credence by the lower Court.  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.2d 614, 619 (2d Cir. 1996); *Franco*, 2011 WL 317971, at *9 n.8; *Quiles*, 2013 WL 5744322, at *14 (S.D.N.Y. Oct. 23 2013).

Assuming, *arguendo*, that Domenech's automotive lift installations were part of his overall employment duties, which Parts Authority maintains they were not, the amount of time Domenech spent performing any such work constitutes a de minimis percentage of Domenech's overall duties and is not sufficient to overcome the undeniable fact that Domenech's primary duty was making outside sales.  Likewise, Domenech's conclusory contention that he is a "manual worker" as defined by Regulation 29 C.F.R. §541.3(a) on the unsubstantiated basis that at least twenty-five percent (25%) of the work performed by him was purportedly manual in nature is incorrect.

Notably, Domenech ignores and fails to address that the Regulations treat as exempt all work "incidental to and in conjunction with the employee's own sales as exempt outside sales work or solicitation."  29 C.F.R. § 541.500(b).  Domenech does not and cannot refute the fact that his telephone conversations, sales call-logs,

29

written call reports/sales lead sheets, trips to customers' businesses, sales training, collections efforts and equipment inspections were all incidental to and performed in conjunction with his efforts to consummate sales and perform his outside sales duties.  (*See* Reply Affidavit of Yaron Rosenthal (A24-25) (describing how all sales personnel performed collections as part of their duties and that lift inspections are used as a means to promote sales))

Furthermore, the case quoted at length by Domenech -- S*chwind. v. EW & Associates, Inc.*, 357 F. Supp. 2d 691 (S.D.N.Y. 2005) -- which discusses the assessment of the percentage of time an employee is engaged in nonexempt work versus exempt work, is no longer applicable as the Federal Regulations were amended in 2004 to remove the twenty percent (20%) limitation on nonexempt work.  *See* 69 F.R. 22122, *22127-22128 (explaining that the Department has chosen to adopt the primary duty approach, which does not include calculating the twenty percent (20%) limits on the amount of time devoted to non exempt tasks).

The overwhelming credible evidence in comparison to Domenech's self-serving and conclusory mischaracterization of his duties only supports a finding that Domenech was an exempt employee because his primary duty was making outside sales.

30

**POINT II.   THE DISTRICT COURT CORRECTLY FOUND THAT DOMENECH WAS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS OVERTIME CLAIM.**

As shown, the lower Court correctly found Domenech is exempt from overtime under the outside salesperson exemption.  Nevertheless, even assuming, *arguendo*, that the record does not support the lower Court's finding that the exemption was met, Domenech is not entitled to summary judgment on his overtime claim as his damage calculation is based on an uncorroborated estimate pulled out of thin air.  In fact, Domenech chose not to record his hours during his employment with Parts Authority (A29) and never complained about not being paid overtime. (A26)   Furthermore, Domenech's uncorroborated estimate of working 56 hours per week (A304-05) flies in the face of his deposition testimony that he would work, on average, less than 50 hours per week. (A125-126)

Thus, under no circumstance could it be considered that the lower Court erred in not granting Domenech summary judgment on his claim for overtime.

**POINT III.  THE DISTRICT COURT CORRECTLY FOUND THAT PARTS AUTHORITY PROPERLY PLED THE OUTSIDE SALESPERSON EXEMPTION AND, THEREFORE, THAT IT DID NOT WAIVE THE AFFIRMATIVE DEFENSE.**

Domenech disingenuously asserts that Parts Authority failed to plead the outside salesperson as an affirmation defense and has thereby waived the ability to assert the exemption.  Not only did Parts Authority properly plead the exemption as its ninth affirmative defense (A19), but Domenech's counsel formally admitted

31

to the Magistrate Judge at the outset of the action that he was aware that Parts Authority was pleading the outside salesperson exemption as an affirmative defense (A317) and then litigated the entire case based on determining whether Domenech was properly classified as an outside salesperson under the FLSA and NYLL. Domenech's motion to waive the exemption affirmative defense asserted by Parts Authority fell on deaf ears before the District Court and likewise should not be given any credence here.

### A. Parts Authority Properly Pled the Outside Salesperson Exemption as an Affirmative Defense.

Pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 8(c), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…." "The rule is intended to notify a party of the existence of certain issues" in dispute. *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1983); *see also Miller v. Batesvill Casket Co.*, 219 F.R.D. 56, 59, 2003 U.S. Dist. LEXIS 22461, *8 (E.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds, remanded*, 312 Fed Appx 404 (2009, CA2 NY) (explaining that the core purpose of FRCP Rule 8(c) is "to act as a safeguard against surprise and unfair prejudice").

In assessing the sufficiency of a defendant's affirmative defense, "an inquiring court must examine the totality of the circumstances and make a

practical, common sense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." *Williams v. Ashland Eng'g Co., Inc.*, 45 F.3d 588, 593 (1st Cir. 1995) *abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.d 136 (1st Cir. 2000); *accord Hernadez v. City of Harford*, 30 F. Supp. 2d 268, 270-71 (D. Conn. 1998). Furthermore, the Second Circuit previously held that "a district court may consider the merits of an affirmative defense – even one explicitly listed as such in Fed. R. Civ. P. 8(c) – raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski, III*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003)).

In the instant matter, Domenech's counsel misleads this Court by repeatedly asserting that Parts Authority failed to plead Domenech's exempt status under the FLSA and NYLL as an affirmative defense. The record clearly demonstrates that Parts Authority pled as the ninth affirmative defense that Domenech "may be exempt from overtime requirements under the Fair Labor Standards Act and/or the New York Labor Law and therefore is not entitled to overtime pay during all relevant periods." (A19)

In a completely disingenuous an effort to overcome Parts Authority's ninth affirmative defense, Domenech attempts to convince this Court to augment the

33

pleading requirements for an affirmative defense under FRCP Rule 8(c); however, his argument is untenable. Domenech contends that the heightened pleading requirements set forth by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 127 S.Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) in connection with FRCP Rule 8(a), should equally apply to the outside salesperson exemption when raised as an affirmative defense under FRCP Rule 8(c). Yet, neither case stands for such a proposition nor supports the expansion of such standard to an affirmative defense. Both the decisions in *Twombly* and *Iqbal* address the pleading requirements for a complaint under FRCP Rule 8(a) and implement a "plausibly" pleading standard which requires that a plaintiff's claim for relief plead enough to "raise a reasonable expectation that discovery will reveal evidence" that will show the plaintiff is entitled to relief. *Twombly*, 500 U.S. at 545.

An affirmative defense differs from a claim for relief in both requirements and purpose. While FRCP Rule 8(a)(2) requires "[a] pleading that states a claim for relief must contain… a short and plain statement of the claim *showing* that the pleader is entitled to relief" (*emphasis added*), FRCP Rule 8(c) varies in that it requires "in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Unlike a plaintiff's claims which are governed by FRCP Rule 8(a), FRCP Rule 8(c) does not require that an affirmative defense or

34

avoidance make an entitlement "showing". *Cf.* FRCP Rule 8(a)(2). The goal of FRCP Rule 8(c) is to provide notice to the plaintiff, avoid surprise and undue prejudice, and afford the plaintiff a chance to argue, if able, why the defense is unfounded. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S. Ct. 1434, 1453 (1971). Parts Authority's ninth affirmative defense indisputably satisfies the pleading requirements of FRCP Rule 8(c).

> **B.** **Domenech Has Not Suffered Any Prejudice as a Result of Parts Authority's Motion for Summary Judgment on the Outside Salesperson Exemption Affirmative Defense.**

Even if this Court finds that Parts Authority should have pled the outside salesperson exemption with greater specificity, numerous courts have gone so far as to acknowledge and hold that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Steinberg v. Columbia Pictures Indus.*, 663 F. Supp. 706, 715 (S.D.N.Y 1987); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 349-351 (2d Cir. 1993) (affirming district court's consideration of affirmative defense first raised in summary judgment motion where plaintiff did not show bad faith or prejudice); *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 29 188, 213 (E.D.N.Y. 2007) (permitting defendant to raise an affirmative defense for the first time in the summary judgment motion as plaintiff was not prejudiced and had ample time to

respond); *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, No. 99 Civ. 12117, 2000 WL 1944773, at *15 (S.D.N.Y. Dec. 18, 2000) (allowing affirmative defense to be considered even though defense was not pleaded in answer where there was no evidence of bad faith on part of defense counsel and no prejudice to plaintiff because plaintiff had knowledge of facts upon which defense was based and notice of the possibility that the defense would be asserted); *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 540 n.6 (S.D.N.Y. 1998) (noting that a defendant may raise an affirmative defense in a motion for summary judgment for the first time where plaintiff does not assert any prejudice from lateness of pleading); *accord Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1445-46 (9th Cir. 1997) (recognizing that defendants may raise an affirmative defense, such as a claim of exemption under the FLSA, for the first time in a motion for summary judgment so long as the delay does not prejudice the plaintiff). Not only has there been no prejudice to Domenech here, but Domenech and his counsel were admittedly aware of Parts Authority's exemption defense and litigated the entire case based on the outside salesperson exemption. (*See* A317)

From the very outset of this action, Domenech and his counsel openly acknowledged on multiple occasions that Parts Authority raised Domenech's exempt status as an affirmative defense to this action. As evidence of Domenech's knowledge and understanding that Parts Authority was asserting an FLSA and

36

NYLL exemption—specifically the outside salesperson exemption—as an affirmative defense, Domenech's counsel admitted to the Magistrate Judge at the initial conference that this case turned on whether or not Parts Authority would be able to establish that Domenech was an exempt employee, stating: "The issue will be the exemption. I think the defendant is going to claim [Plaintiff is] exempt from overtime and we're going to claim he wasn't … we don't believe he was much of a salesman." (A317)

In addition, the parties' respective discovery efforts were framed around establishing whether or not the outside sales exemption, or any exemption under the FLSA, applied to Domenech's employment. (*See* A312-13) Domenech's First Set of Interrogatories and Parts Authority's Responses thereto clearly demonstrate that Domenech was seeking discovery in connection with Parts Authority's exemption defense; Domenech expressly asked Parts Authority to "[d]escribe Plaintiff's job responsibilities for each of the years Plaintiff was employed by Defendant," (A272) information which is neither relevant nor necessary to prove/establish Domenech's affirmative claims, but rather is directly related to Parts Authority's outside salesperson exemption defense.

Moreover, there are a finite number of exemptions that may be raised under the FLSA and NYLL,[2] all of which can be ruled out in connection with Domenech's employment simply based on common sense; the only plausible exemption category that existed in connection with Parts Authority's ninth affirmative defense as applied to Domenech's employment was the outside salesperson exemption. The fact that Domenech was provided notice of the exemption issue by means of Parts Authority's ninth affirmative defense, was provided a fair opportunity to conduct discovery on same, and then went on to conduct discovery distinctively on the outside salesperson exemption, fully supports the conclusion that Parts Authority did not waive the outside salesperson exemption as an affirmative defense.

The foregoing bares clear that the core purpose of FRCP Rule 8(c) has been upheld here as it is unquestionable that Domenech was put on notice of Parts Authority's intention to defend the action based on the outside salesperson exemption. After litigating the exemption issue for approximately 10 months, Domenech cannot reasonably claim that he was surprised or unfairly prejudiced by Parts Authority's position that Domenech was an exempt employee excluded from overtime benefits.

---

[2] The most common categories of employees that are exempt from overtime pay requirements are as follows: Administrative employees; Executive employees, Professional employees; Computer professional employees; Outside sales employees; and Highly compensated employees. 29 C.F.R. §§ 541.100-541.601 (2011).

Finally, in a last ditch effort to overcome the exemption issue that proved to be fatal to Domenech's case, Domenech disingenuously requests that this Court ignore Parts Authority's ninth affirmative defense, ignore his statements to the lower Court regarding the central issue in the case, ignore the exemption issue focused on throughout discovery and grant Domenech a windfall for the reason that Parts Authority purportedly failed to provide certain documents during discovery which Domenech contends would have provided crucial details in connection with his alleged duties as a technician. However, it should not be lost upon this Court that Domenech failed to raise any dispute in connection with missing documents until after the close of discovery when he was faced with a dispositive motion. If there was truly an issue with missing documents or information sought by Domenech that was central to the claims, then Domenech should have moved the lower Court, prior to the close of discovery, to compel production of same. In light of Domenech's failure to raise any such issue at the appropriate time, Parts Authority was "entitled to proceed with its motion for summary judgment, without having to go back and litigate discovery disputes that were never brought to its or the Court's attention at the time when all such disputes were supposedly being raised and addressed." *DC Comics v. Kryptonite Corp.*, No. 00 Civ. 5562, 2002 WL 31159121, at *3 (S.D.N.Y. Sept. 26, 2002).

Based on the foregoing, the lower Court properly denied Domenech's motion for summary judgment on the waiver issue. Likewise, this Court should find that Parts Authority did not waive the outside salesperson exemption as an affirmative defense and deny Domenech's motion since it is irrefutable that Domenech was an exempt from FLSA and NYLL overtime benefits under the outside salesperson exemption.

## **CONCLUSION**

For the foregoing reasons, the District Court's decision granting Parts Authority's motion for summary judgment and dismissing Domenech's claims should be affirmed.

Dated:  East Meadow, New York
       February 4, 2016

Respectfully submitted,

*/S/ DOUGLAS E. ROWE, ESQ.*
Douglas E. Rowe, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Attorneys for Appellee/Defendant
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7102
drowe@certilmanbalin.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENT AND TYPE STYLE REQUIREMENTS

1.      I certify that this brief complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because:

This brief contains 8,780 words, excluding parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

This brief has been prepared in proportionally spaced typeface using Microsoft Work 97-2003, in Times New Roman, font size 14.


Dated:      East Meadow, New York
            February 4, 2016